Second case is Martin D. Renfroe v. USAA, 24-133A2. Mr. Nieman, you may begin when you are ready, and I see that you have reserved some time for rebuttal. Thank you, Judge Branch. May it please the Court. My name is John Nieman. I'm here for the Appellant at USA General Indemnity Company. The District Court misread Alabama law when it held that a judicially crafted doctrine of public policy avoided what are very common provisions and exclusions found in property insurance contracts. These contractual provisions unambiguously exclude from coverage any damage that is done by the intentional acts, not only of the insured who is filing the claim, but also any insured, including that insured's co-insureds. The ruling we are appealing barred my client from using one of these exclusions to defend itself against the plaintiff's breach of contract claim. At this trial, that ruling was contrary to Alabama law in numerous respects and prejudiced my client in two substantial ways. The first form of prejudice happened at this trial. The evidence that this fire was intentionally set by the daughter of the plaintiff, his co-insured, should have been evidence that my client could have used to defend itself against the breach of contract claim, evidence that this claim was not due to be paid. Instead, the Court's ruling had the perverse effect of allowing the plaintiff to effectively flip the tables and argue that this evidence was reason why USAGIC had to pay the claim. So your case is different from some of the other state cases where one of the insured was the arsonist in the other cases and there was evidence like they had been arrested or were convicted or had admitted to the arson, but here we have a situation where we have you're pointing the finger at two people, neither of whom admits that they are in fact the arsonist. So why doesn't this put you into sort of a different realm that isn't covered by the Alabama cases? It's certainly covered by the Alabama cases and I'd suggest that it's distinction without a deference. The plain language of this exclusion says that the insurance company is not on the hook for any intentional acts that resulted from or that were by any insured. That language, the plain import of that language applies to any insured, any means any. It can't possibly be the case that the claimant in one of these cases can say that, can point the finger at the other insured and the co-insured can point the finger at them, leaving a situation where the jury thinks it's definitely arson, but it's 50% likely that it was one insured, 50% likely the other insured and therefore both insureds are entitled to payment under the policy. But even your, the fire investigator report does not say this is arson. It says there are two or more working hypotheses that were considered but cannot be eliminated. Number one, hypothesis one, an electrical or mechanical failure of the structure's operating systems. Number two, hypothesis two, the intentional introduction of an open flame device by human action. So hypothesis two is arson. It doesn't name names. So you're, you have to get to 51%, like that someone torched, an insured torched this structure. If you even, looking at the fire investigator report, seem to be at best at 50%, although we don't know because the investigator report did not rank which one was more likely, how do you then get to 51% in your words? To be clear, that was not the basis for the district court's ruling. The district court, on this evidentiary point, surveyed the evidence and concluded that there was substantial evidence from which the jury could conclude that this fire was the result of intentional conduct, and we certainly disagree with the district court on its ruling as to Alabama law and public policy. Nonetheless, the district court's survey of the evidence and its conclusion from that was amply within its discretion. There's a very, the cause and origin report, Judge Vance, that you're referencing demanded from the person who authored that scientific certainty as to what happened here. That is not the standard under Alabama law for what the jury considers when an insurer raises this sort of defense to coverage. Judge Vance's opinion for the court, for this court, applying Alabama law in Fondren versus Allstate instead said that the burden is not particularly high on the insurer. It requires only a fair preponderance of the evidence, including circumstantial evidence that would bring minds of ordinary intelligence to a persuasion that the fire was intentionally set. Here there's ample evidence of an arson here. For example, the fire was unusually strong, stronger than you would expect to see for an unintentional place. So the, going back to what your comment on the district court's view of the evidence in denying the motions for summary judgment, the court found that there was enough to create a genuine issue of material fact. That was the observation of the evidence. What would have happened, and I think this kind of goes back to Judge Branch's point, which is how would the trial have proceeded differently if you, because I think what you're saying is that it was not fair to you at trial that you were not permitted to present the evidence of the, I guess it was the daughter, the evidence that she may have set the fire. So if you had got, had that opportunity at trial, would you have been able to present evidence to show by a preponderance of the evidence that it was intentionally set? I mean, is that what you're missing here? Was that opportunity? Well, Judge Damien, it's not so much that we didn't have an opportunity to present evidence that the fire was intentionally set. We did present evidence of that, and the trial judge's ruling below reflected her assessment that there was enough evidence of intentionality here. What we're complaining about, what our concern in the appeal focuses on is the fact that we were not able to argue that Ms. Renfro's actions showed that she likely was the arsonist in this case. And instead, my friend Mr. Dodd, who's an excellent trial lawyer, was able to commandeer that evidence in his closing argument and say that because the evidence pointed the finger at Ms. Renfro, then that was reason why USAA had to pay the claim, even though under the plain language of the exclusion, that should have been evidence that we could have pointed to to say, actually, no, we don't have to pay this claim because it's more likely than not that any insured would intentionally set this fire. So really, you think that regardless of the evidentiary decision, if the law had been appropriately interpreted, you would have said, fine, Ms. Lambert or Mr. Renfro set the fire, either way, we win because they're both insured, right? That's exactly right, Judge Grant. I find myself wondering, this doesn't matter, but I find myself surprised that the policy was issued in the first place given the conversations that happened beforehand. But anyway, you don't need to comment on that. It's just a thought that's been running through my head. I think certainly the conversations that occurred beforehand, Judge Grant, are strong evidence that this fire was in fact intentionally set. I mean, here we have both insureds, both Mr. Renfro and Ms. Lambert calling people ahead of time, USAA and in the case of Ms. Lambert, authorities saying that the other one is going to set the house on fire. We have both of them having experience in their past with their houses burning down in suspicious circumstances, and we have not more than two months later, the house actually burning down. It would be a little surprising if, in fact, this was not arson. And as the district judge's ruling suggests, there certainly was ample evidence from which the jury could conclude that. So there's no doubt that that evidence can be considered, right? The evidence from the time of the party seeking the policy, that's definitely in and can be considered as to whether the fire was arson, right? Yes, absolutely. You're not limited to just looking at kind of the expert reports and the party's testimony. Absolutely. This Court's decision in Bondurant expressly recognizes, and the Albansian Court has said, circumstantial evidence can be in play here and often needs to be in play in light of the way that arsons work. Arsons necessarily destroy evidence. It's often hard to prove purely by, you know, a CSI approach. That's why circumstantial evidence of the sort that is amply present in this case can be considered by the finder of facts. Can you now articulate exactly what is the cure here? What exactly should, in your view, this Court do? The Court should reverse. It should hold that these exclusions are valid as a matter of Alabama public policy, and the Court should remand for a new trial where my client is allowed to make the same argument that the plaintiff made in his closing argument, make it in favor of excluding this  Likewise, you know, I think in that circumstance, if we are allowed to resort to the exclusion and bring that exclusion to the jury's attention, we almost certainly will point to additional evidence that we think more firmly points towards Ms. Renfro's involvement here, although I do think there was enough of the left. We should be making a declaration of what Alabama public policy is then? Well, the Court should say that the District Court misapprehended the Alabama Supreme Court's decision in Hosey v. Sibles when it read that decision as voiding these provisions as a matter of public policy. That reading of Hosey can't be right for a number of reasons that we've outlined in the briefs. Most notably, the precedents on which Hosey relied expressly say that these exclusions are enforceable if the language is sufficiently clear. We've got clear language here. Even after Hosey, the Court, the Alabama Supreme Court, in the Grimes v. Alpha case made clear that the Alabama courts are simply not in the business of voiding contractual provisions as a matter of judicially crafted public policy. Only the legislature in Alabama determines what public policy is. Although that would take down Hosey too, right? Because there is a public policy aspect, or I mean, Feebleman, there is a public policy aspect to Feebleman, correct? The only sort of public policy tinkering that's going on with both Feebleman and Hosey is the court's recognition of the old English common law rule precluding an insured from obtaining coverage for an arson that they, in fact, committed. So those cases do recognize that there's an old common law defense for insurers, but that's covered by the fact that the Alabama Code expressly incorporates into Alabama law, or incorporated into Alabama law, English common law, as it existed at the time that Alabama was founded. That's not the court's making up policy and saying that contractual provisions are void because the court thinks that they're a bad idea. But you don't think that Hosey is completely abrogated by the Supreme Court's recent holding on public policy? You just think that it's, we should read it in light, at least in light of that holding? Or do you think that even the more core holding from Hosey that you seem to say is not inconsistent with your position here would also be improper? No, I think that the Hosey reasoning is fully consistent with Grimes' stricture on judicial public policymaking in the sense that Hosey says there is an English common law defense. We are not going to extend it to preclude insureds and insurers from agreeing upon coverage in circumstances where the co-insured actually committed the arson. So an insurance company is fully free to issue a policy that says we're going to cover Mr. Renfro if his daughter set this fire. But the insurance company is also free to do what it did here, which is say actually we're not going to cover a fire in these circumstances where you have a co-insured who sets the fire. There's nothing in Alabama public policy or Hosey that precludes that result, especially in light of the plain language of this particular policy. Last question, a quick one at least for me. Do you think that we should certify the question or do you think that Alabama law is already clear enough that we don't need to? The latter. Alabama law of appellate procedure 18 invites certified questions in the event that there is no clear controlling precedent on a particular question of Alabama law. Here we have clear controlling precedent as between Feibelman and the Grimes case as well as the solitary data point we have from the legislature on this point, the Domestic Abuse Insurance Act, which creates this limited exception requiring coverage for innocent insureds who are victims of domestic abuse. That exception would do no work if the district court's reading of Alabama public policy here were correct because under the district court's view, all innocent insureds have to be covered regardless of whether they're the victims of domestic abuse. All those factors render this question free from doubt and not one that the court needs to send to the Alabama Supreme Court. So let me ask you a question about stacking percentages and why, so I know we had a jury trial here. If we were to reverse, if we were to say you win, and this is just in my hypothetical, and we send it back and that you get to bring in all the evidence that you want to now against the daughter, and maybe a special verdict form would solve this, but if the jury thinks that there's 26 percent chance that the father committed the fire and a 26 percent chance that the daughter committed the fire, why necessarily do we stack those together to get you over the 50 percent hump? Why is it not that it's 20 percent chance, 26 percent chance that someone committed arson and we just can't decide? Would a special verdict form solve that problem? I'm not sure that a special, I imagine there are many different ways to craft a special jury, but ultimately the plain language of the exclusion, I'd suggest, allows for a denial of coverage in the circumstances that you posit, Judge Branch, where the jury believes it's more likely than not that it was an arson. But the jury would have to believe that it's more likely than not that an arson. They couldn't just tell you 26 percent chance somebody did it, 26 percent chance someone else did it, because that could arguably mean 26 percent chance of arson. I think that's a fair ruling and it's something that the district court could take care of in terms of whether it's a special verdict form or just instructions to the jury about what it needs to decide. My red light's been on for a while. Thank you, and you still have time for rebuttal. Mr. Dodd. I want to go right to the issue just raised. So, if the case is remanded and he tries the case, I'm sorry, if the case is remanded and he tries the case and he is able to offer in the co-insured provision that Judge Cornelison omitted or predicated, he is saying now that, not that there is additional evidence, and I want to be clear about this, USAA has never said there is additional evidence that they would have offered through Ms. Lambert or about Ms. Lambert. In their briefing and just now, he is saying that they were only prohibited from making the argument that she had burned it. In the beginning of the trial, Judge Cornelison said, I am not prohibiting either party from offering evidence that Ms. Lambert did it. They quote that, the USAA quote said in their principal brief. The judge said again, she said, I'm not, both parties can offer evidence that Ms. Lambert did it. The question that is before the court, several, is that if it goes back and USAA can't identify who it is, their letter of denial says, we don't know which one of you did it, but you're blaming each other and therefore, one of you must have done it. What would it have been relevant to if the affirmative defense was not, because you want to, I mean, they wanted it as an affirmative defense for the exclusion. They needed to prove by preponderance of the evidence that there was an arson in order to get the exclusion here. What would it have been relevant to if the jury wasn't going to be instructed that it would have mattered that the daughter was the one who committed the arson when she wasn't a party to the case? That's why they didn't present the evidence because the judge said, that's not relevant here. Well, and I think the record says that they could present it, but let me address that a different way. They made a proffer. USAA made a proffer at the close of their case, I believe, or maybe it was the close of Plano's case, and proffered testimony about the provision term, the provision here they were arguing about. But they did not offer evidence. They did not offer any evidence that brought Ms. Lambert or Mr. Renfro within the operation of that policy. They didn't offer any evidence that Ms. Lambert had burned the building. The only evidence that we have in the record is the evidence that's before the court. But they had the opportunity when they made the proffer of the provision to offer what evidence they wanted. I mean, that was their opportunity, and instead they limited it to the terms of the provision. I would argue that they are now, have waived their argument that there's some new evidence that if we go back, and I'm not sure that that's what Mr. Nyman is saying, but I would argue that they had that opportunity when they made their proffer and they didn't do it. But if it goes back, I'm sorry, I didn't mean to speak over you. No, no, you weren't speaking over me, I'm thinking, go ahead, go ahead. If it goes back under the current, and this provision is read, we are still left with the principal question is, who did it? And who is going to figure that out? The Alabama Pattern of Jury Instruction says the name of the insurer does not have to pay if the name of the insurer, you have to identify the person that did it. That just makes common sense. The notion that there's going to be some collective odds argument, it just defies logic. The jury, under the Alabama Pattern of Charge, is, their job is to figure out if the insured, who is accused by the insurance company of having set the fire, did in fact set the fire. There is no pattern of charge that remotely resembles USAA's collective odds argument that the jury gets to figure out which one did it. Under that argument, if, let's say that there was not in the family the type of acrimony that I think we've all identified here. Let's say instead that a father and daughter owned a house and agreed that they would rather have the arson insurance proceeds than the house. And one or the other of them set the fire. And then they went to the insurance company and said, one of us set the fire. You don't know who. We'd like the money. There's no way, there is no way to show who it was. Are you saying that in that situation, because it's 50-50, assume the evidence is in complete equipoise that the insurance company has to pay, even if they admit that one of the insureds set the fire, you just don't know which one? Well, I, that's not exactly the situation we have. They were blaming each other. But I mean, the mere fact that they blame each other. No, no, no. I'm sorry. You can answer my question, which I understand is not this case. You're not conceding anything about them having agreed that they set the fire in the real case. I'm saying in the hypothetical case, where two co-insureds say, one of us set the fire, but you don't know who, then under your theory, does the insurance company have to pay? Yes, because, I mean, it's, the policy provision binds the insurance company. They would have to. Who burned the house? Well, but in this, in that case, you don't know. Is it, is it Sam or Sally? We don't know, because they both admit that one of them did it, but neither one of them will say who. So you can't, you can't know who committed the arson. Yes, ma'am. I misunderstood. Yes. In that instance, I don't think the insurance company would have to pay. In this instance, they blamed each other, and the insurance company in the turndown letter says, because you blame each other, we're finding that you, that there's no coverage. And in the paragraph before that, in the turndown letter, they say the parties disagree with each other. Excuse me. So they say, first, that the parties disagree with each other, Mr. Renfro and Ms. Lambert disagree with each other. Then the next paragraph, they say they blame each other. So, I mean, it's not the same, it's not the same position. The mere fact that they blame each other can't be probative of whether one of them did it. But in both cases, you don't know who did it, and I understood your argument to be, we don't know who did it, so therefore the insurance company has to pay. Now maybe the difference is that maybe actually here, in the real case, neither of them did it because maybe it really was an electrical fire, and they were just already convinced that the other one was going to burn down the house, so, you know, lightning can strike in weird ways. So maybe that's the difference that you would identify between this case and that one. But then shouldn't it be, either way, shouldn't a jury decide that? I mean, I think what happened here was the jury was not permitted to decide, based on all of the evidence, whether someone intentionally set this fire, including the possibility that the daughter set the fire. I mean, what the appellant is asking for is to send this back and let this go to the jury with everything on the table. So if the jury comes back and says she did it, then that's going to, we may still be back here with the same problem, which is, if she did it, why should he not be able to recover, you know, because of this Alabama public policy? But if he did it, then he is out of luck, right? But the jury didn't get the opportunity to consider all of that evidence. Well, and again, respectfully, I disagree. They did get the opportunity to consider the evidence, and I think that's what Mr. Nyman just conceded. They didn't hear the argument that that evidence also implicated Ms. Lambert. In this case, it would be ironic if they went back and they could blame Ms. Lambert because she was their chief witness that Mr. Renfrow burned her. The only thing that she didn't know was that USAA still blamed her at the moment of trial accusing her that she could have been one of the parties that burned it. She admitted that on the stand and said, I did not know. I was a party who was suspected of burning it. And even as early as a week before trial when she met with counsel, she still was not advised that she was a party that was suspected of burning it, although she was on the stand blaming Mr. Renfrow. That was their trial strategy. But let me back up for just a moment. This to me is the crux of the matter. If USAA could not figure out who burned the house, then they can't come in. It's no different than any other arson case, set aside the provision. If I can't figure out who burned the house, then as the insurance company, I can't deny the coverage based on the fact that there's arson. Because under the Alabama pattern jury instructions, I have to be able to prove that the insured caused the fire. Well, if USAA can't figure it out, how is that question submitted to a jury? But if USAA can't figure it out, I mean, that goes back to my hypothetical. If two people concede that one of them started the fire, but you don't know who, USAA can't figure that out either. Somebody started the fire. In other words, somebody started the fire. Do they really have to say who? They're saying, we don't have to say who. If somebody said it, there's no coverage. And they didn't get that opportunity. But the mere fact that they're blaming each other does not exclude the rest of the world, all other natural causes. The testimony that they did not know the origin of the fire, the testimony Ms. Renfro said, I don't know if it's my father. The testimony that the mere fact that they blamed each other does not mean it's arson. All that testimony was undisputed, and it was USAA's testimony. It wasn't the plaintiff's. USAA's, both experts, Ms. Renfro, Huvec, Crawford, all said in the arson report, all say, we don't know if it's arson. But didn't you at trial point at Ms. Renfro? Yes. So had the, but you wouldn't have done that if the jury had been instructed that had Ms. Renfro been the one who started the fire, there would be no coverage here. If that policy was applicable, that's correct. I would not. Remind me, remind me specifically if you have them, or maybe our friend on the other side can look at them, what the jury instructions said. I'm looking at the verdict form, but I don't have the jury instructions. Your Honor, so the jury instructions said USAA does not have to pay the claims. If it proves, and I'm reading this out, I'm patterned your instruction, I know you've heard this before. I'm a trial lawyer, not appellate lawyer, please forgive me. USAA does not have to pay the claims if it proves the fire was intentionally set, the name of the insured or someone acting at his, her direction intentionally set the fire. The evidence, they couldn't. Their own forensic work says we don't know. Their own, the last person they put on the stand, my mind blank at the moment, but their senior special insurance unit investigator, last testimony in trial said the mere fact that the parties blame each other does not mean there's arson. That's USAA's testimony, that the name of the insured had a motive for the arson. So you've got the fire was intentionally set, that the person, that the insurer is the one who set it, and that there was motive for the arson. And you said there was a name, read it, if you don't mind, read the line with the name one more time. I'm sorry. I'm reading the pattern instruction, which just has the generic thing where it says name of the insured, but in this case, it would be the fire was intentionally set, Mr. Renfro or Ms. Lambert, or someone acting at his or her direction, intentionally set the fire, if the provision was read the way Mr. Niman wants it read, and the name of the insured's motive for the arson. And that is my point. How is the jury, if USAA can't, that is USAA's burden on their affirmative defense, is to prove that the insured caused the fire. It can't be that they can point the finger at each one and say, we're not sure who did it, and you get to pick who did it. Do we have a case from Alabama specifically addressing that question? I know we have. I've looked and looked. Yeah. Can I ask you a question about one other argument you're making, and I certainly know the Alabama case law, when they're examining these policies and saying, well, the policy didn't make it clear that, well, you have to, Alabama law, the case law suggests that you need to be, the policy needs to be clear whether it's joint or several liability. And you have suggested that that case law means that the sort of magic word has to be  And in this policy, since the policy didn't say joint liability, then it's obviously several. But looking at this policy, it's very different from the cases that have come before it. It clarifies, if either one, if either insured is responsible for arson, neither insured recovers, right? Why should magic words rule as we look at this policy? Well, I don't, and I'm glad you asked that. Mr. Niman, who's writing out Envy, says that those are, I forget, inaccessible legalisms, but the question of the joint and several terms are raised, those are the district court's terms when she is construing hosing. The district court raises the terms, and she also is, in her opinion, is distinguishing the slate, the cell versus slate, or whatever it is, the Georgia case. But she relies on the joint and several analysis. She relies on the joint and several analysis. Right, and when a policy isn't clear, certainly that makes sense, that if you don't say joint, we're going to assume several. But here, I think there is certainly a good argument, the policy makes it clear, it's joint, even though it doesn't use that magic word. So I guess my question still goes back to, why do we have to use magic words? Well, I mean, I don't think, my argument would be this, and this is Margaret, is that if it doesn't say joint or several, then the presumption is several. I don't know that we have to use magic words, I mean, to your point, I guess there's a construction that allows it to be reached that says that it is joint. And so I have two arguments about that. I have that the case can be saved, or her policy, her ruling at the district court level can be saved by either apt words, they're not apt words she used, or it is a public policy matter. And that's a question of law. Either way, I win, because I don't think that the facts of the case ever implicated the co-insured provision. Thank you. Mr. Neiman, you have three minutes for rebuttal. And I hate to throw you off your game, but is the actual jury instruction in the record? It is. Do we have it? It's my impression that it is, Judge Damien. I got on my computer and tried to pull it for you in response to Judge Grant's question. Okay, we will find it, because he was reading the model jury instruction. But what is your, can you tell us, what was wrong with the jury instruction in your view? What was wrong with the jury instruction was that it necessarily incorporated the judge's ruling at the outset of trial that USAGIC could not point to the exclusion that the court had deemed void. If USAGIC had been able to do that, the instruction would have read quite differently. It would have said something along the lines of, if USAGIC establishes that any insured on the policy intentionally set this fire, then your verdict should be for the defendant in this case. That's emphatically not what the instruction said here. If we don't have the instruction, I suspect the court would appreciate a joint submission of the instruction after the argument. But I mean, I find myself wondering if, this is all very interesting, but if there's a dispute about what a jury instruction should say, maybe that's a secondary question to the main issue on appeal, which is, did the court get this question about Alabama law right? That's correct, Your Honor. And Mr. Dodd did not defend, during his presentation today, the district court's ruling on Alabama public policy at all. And the reason I'd suggest is because the ruling was clearly contrary to Feigelman, was clearly contrary to these other indicia of Alabama law. That was the central ruling that the district court made below. That was the ruling that we have appealed, and this court can resolve this case easily by saying that ruling was mistaken. Under Alabama law, these exclusions are not void, and remanding for the district court to iron out at a new trial all these issues that Mr. Dodd is now raising about, for example, the state of the evidence and what happens depending on, you know, if the jury thinks that it's 38% likely that Ms. Lambert did this and 30% likely that Mr. Renfro did it. All of those things are matters that the district court can resolve on remand. It's important, though, that the court reach the issue of the voidness or non-voidness of this provision because in addition to prejudicing my client at trial, we were not able to make the arguments or even cite the evidence as to Ms. Lambert's involvement in the fire without prejudicing the case that we were forced to try under the court's ruling. It also creates the situation where claimants will argue based on the district court's order not only that these perfectly valid provisions are void under Alabama law, but that any future reliance on these provisions gives rise to tort claims for punitive damages in the future. The court should not allow that ruling to stand in light of those realities. We'd ask the court to reverse and remand for a new trial. Thank you. Thank you both. We have your case under advisement. Thank you. Our third case.